**Decided  November  25,  1983**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

LYDIA CAMACHO ROMISHER,      )      CIVIL ACTION NO. 83-401
                             )
            Plaintiff,       )
                             )
      vs.                    )                ORDER
                             )
MARIANAS PUBLIC LAND         )
CORPORATION, et al.,         )
                             )
            Defendants.      )
_____)

    The plaintiff's motion for a preliminary injunction
came on for hearing on November 23, 1983.  This hearing
followed the initial grant of a. temporary restraining order
on November 18, 1983 which, _inter alia_, restrained the
Marianas Public Land Corporation (MPLC), its agents, employees,
and attorneys from disbursing any of the funds it holds for
payment to the private landowners of Tinian who are due
compensation for the acquisition for land leased to the.
United States Government pursuant to Article VIII of the
Covenant to Establish a Commonwealth of the Northern Mariana
Islands in Political Union with the United States of America
(Covenant).

The facts upon which this hearing proceeded are either stipulated to or admitted by the pleadings. The essential facts for the resolution of this motion are as follows:

1. The plaintiff, Lydia Camacho Romisher, is a person of Northern Marianas descent, as defined in Section 4 of Article XIII of the Constitution of the Northern Mariana Islands (Constitution), and a United States citizen, as defined in Section 8(a) of the Schedule on Transitional Matters of the Constitution and a resident of Saipan, Northern Mariana Island.

2. MPLC is a public body corporate established and existing pursuant to the provisions of Section 4 of Article XI of the Constitution.

3. The individual defendants Pedro L. Cruz (Cruz) and Jose I. Guerrero (Guerrero) are Directors of MPLC, duly appointed by the Governor of the Commonwealth, with the advice and consent of the Commonwealth Senate, pursuant to Section 4(a) of Article XI of the Constitution.

4. Pursuant to the provisions of Article VIII of the Covenant a lease dated January 6, 1983 was entered into between the Commonwealth and the United States Government for approximately 7,000 hectares of land on Tinian Island. In consideration of the lease, the United States Government

paid $33,000,000.[1]  All of said funds were received by MPLC.

5.    A Technical Agreement executed at the same time as the Covenant, required the Government of the Northern Mariana Islands to acquire all adverse interests in the land to be leased, at no additional cost to the United States Government.

6.    Following the execution of the lease, the defendant MPLC began negotiations with representatives of the owners of privately held land within the leased area, for the purpose of acquiring title to the same.[2]

7.    At the times pertinent hereto, Director Cruz owned 97,654 square meters of the land on Tinian to be acquired.

8.    At the times pertinent hereto, the wife of Director Guerrero had a one-seventh interest in 64,908 square meters of the land on Tinian to be acquired.

9.    On October 18, 1983 a meeting of the Board of Directors of MPLC was held to approve the making of an offer to purchase the interests held by private landowners on Tinian Island.

---

[1]  Though this figure was not actually stipulated to by the parties, this figure is obtained from the lease agreement to which both parties have referred.

[2]  Land acquisition was the subject of another January 6, 1983 Agreement which ostensibly gave MPLC 18 months to acquire the private interests and to pay for them.

10. The offer was approved by the Directors of MPLC by a 5-3 vote. Defendants Cruz and Guerrero voted in favor of making the offer.

11. Sometime prior to the vote, Directors Cruz and Guerrero informed the Board of their interests in the Tinian land.

12. After the October 18th board meeting, some of the Tinian landowners voted to accept the offer.

13. MPLC is ready to disburse the checks to the Tinian landowners at the rate specified in the offer of October 18, 1983.

14. Section 4(d) of Article XI of the Constitution provides that MPLC can act only by the affirmative vote of the majority of the nine directors.

15. Without the affirmative votes of defendants Cruz and Guerrero, MPLC would have been without authority to make the offer of October 18, 1983.

## DISCUSSION
### DOES THE PLAINTIFF HAVE STANDING TO BRING THIS ACTION?

In order to adequately answer this question a review of the status of the plaintiff, in so far as MPLC is concerned, must be explored.

MPLC is established in Article XI of the Constitution. Section 1 of Article XI specifies what constitutes public lands and that the lands "belong collectively to the people of the Commonwealth who are of Northern Marianas descent."

Section 3 of Article XI provides that the "management and disposition of public lands ..... shall be the responsibility of the Marianas Public Land Corporation." Section 4 formally establishes MPLC and, *inter alia*, provides that the nine directors of the corporation "shall direct the affairs of the corporation for the benefit of the people of the Commonwealth who are of Northern Marianas descent."

That the plaintiff comes within the definition of a beneficiary of the provisions of the Constitution is clear (see findings of fact number 1 above). MPLC argues that the plaintiff's claim for relief is similar to an action of a taxpayer attempting to enjoin a wrongful action of public officials. (Page 4 of MPLC's memorandum in opposition). As such, it is asserted, she must show some pecuniary loss or injury to herself or to MPLC. Citing 17 ALR 2d, pg 475, et seq.

Plaintiff's action is framed so as to not allege the offer made by MPLC will directly impose a monetary loss on the plaintiff or others of Northern Marianas descent. It is alleged and asserted that since the 5-3 vote is supported only by the Cruz and Guerrero votes, the action of MPLC as a

fiduciary is null and void and hence any disbursal of the money MPLC holds is illegal and the plaintiff has standing to enjoin the illegal disbursement.

At the outset, the court does conclude that MPLC acts in a fiduciary capacity when it performs its functions pursuant to the Constitution. It holds and transfers public lands for the benefit of an identifiable class of people, to wit: persons of Northern Marianas descent. Should it hold funds that result from the transfer of public lands, the res of the trust is simply transformed from land to money and the same fiduciary responsibility will normally apply. The basic elements of a trust are established in that a trustee, the res and beneficiaries through a trust agreement - in this case the Constitution - are clearly defineable. United States v Mitchell __U.S.__, 51 LW 4999 at 5004.

In the case of MPLC an even stricter Constitutional limitation is imposed on it. Article XI, Section 5(g) of the Constitution provides:

> g) The corporation (MPLC) shall receive all moneys from the public lands and shall transfer these moneys promptly to the Marianas Public Land Trust except that the corporation may retain the amount necessary to meet reasonable expenses of administration.

The Marianas Public Land Trust is established in the Constitution in Article XI, Section 6 and completes the

Constitutional plan to safeguard the proceeds from public lands for the beneficiaries including the plaintiff.

The court finds that the authority cited by MPLC (17 ALR 2d, pg. 475) is not persuasive. Indeed, the annotation supports the plaintiff's position:

> As a general rule, the power of a municipal corporation to dispose of property acquired by it for strictly corporate uses, unless affected by charter or statute, is unquestioned.[1] (Footnote omitted) It may be noted, however, that a different rule prevails where the property is dedicated to the use of the public, since in the latter case the property is considered held in trust for the public and the right of alienation restricted.[2] (Footnote omitted).

That plaintiff's position here is much stronger than a municipal taxpayer is clear. First, there are the dictates and restrictions set forth in the Constitution which, as seen above, unquestionably imposed fiduciary responsibilities upon MPLC. Second, the plaintiff is a beneficiary of a specified class, which is more limited than an ordinary taxpayer.

Additionally, this court has fairly recently accorded standing to taxpayers even though the taxpayers could not show injury beyond that of an ordinary taxpayer. <u>Manglona v Camacho</u>, CTC Civil Action No. 80-177, (aff. D.C. No. Mariana Islands 11/10/83).

The reasoning of <u>Manglona v Camacho</u>, supra, is even more applicable here with the additional and definite provisions for the fiduciary relationship between MPLC and the plaintiff.[3]

It thus appears clear that if an ordinary taxpayer has standing in the Commonwealth to enjoin illegal payments of public funds, the plaintiff stands even in a better position and the above question is answered in the affirmative.

### HAS THE PLAINTIFF SUFFICIENTLY SHOWN A PROPOSED ILLEGAL PAYMENT TO TRIGGER INJUNCTIVE RELIEF?

As noted above, plaintiff's action does not assert a direct or indirect pecuniary loss but is based strictly on the asserted illegal action of the 5-3 vote of the Board of Directors.

Article XI, Section 4 provides that MPLC shall be directed by a nine-member board, selected from various parts of the Commonwealth. Section 4(d) specifies that MPLC can act only by the affirmative vote of the majority of the nine directors, that is five.

The plaintiff argues that the members of the board of directors are held not only to the standards of a fiduciary but also that of public officials acting in the public trust.

---

[3] In footnote 2 in the appellate decision (slip op. pg. 7) the appellate court stated: "In future cases in which this issue is presented (standing), the Trial Court may wish to alleviate some of the confusion which accompanies the "pecuniary interest" approach and adopt a more logical and pragmatic approach to this important and recurring issue." Seldom is such judicial clairvoyance so quickly realized.

■ As fiduciaries, the members have a duty of loyalty to the beneficiaries of the trust to the exclusion of the interests of all other parties. Restatement (2nd) of Trusts §170.[4]

■ As members of a board of directors, appointed by the Governor and confirmed by the advice and consent process of the Commonwealth Senate, they are public officials and consequently have a fiduciary relationship established by common law. 63 AmJur 2d, Public Officers and Employees, §275.

Manglona v Camacho, supra, specifically held that the illegal payment of public funds is an enjoinable act. Thus the crux of this action is whether MPLC's intended disbursal of public funds after a 5-3 vote approving the payment, which vote included the affirmative vote of Cruz and Guerrero, is illegal. The court finds that it is patently so.

■ The entire theory of a fiduciary relationship (whether it be established by the Constitution or by the individual defendants' status as public officers) is to accord the beneficiary the undivided loyalty of the trustee or public official. As such, the members of the board of directors of MPLC must perform their duties honestly, faithfully, and refrain from activities which will interfere with the proper

---

[4] The Restatement is expressly made part of the law in the Commonwealth, 1 TTC 103.

discharge of their duties.  They must act impartially and must avoid any conflict between their personal interests and that of a beneficiary.  Simply put, Directors Cruz and Guerrero had a divided loyalty when they voted on October 18, 1983 and this resulted in a conflict in their duty to the plaintiff.  The plaintiff, as a beneficiary of the fiduciary relationship had a right to expect and to actually have the decision on the purchase of the private interest on Tinian untainted by the personal interests of Directors Cruz and Guerrero.

From the facts presented to the court, the interests of directors Cruz and Guerrero are certainly not de minimus.  Whatever value is ultimately placed on the property, both have a substantial stake in the funds held by MPLC.[5]

MPLC has countered the adverse implications derived from the Cruz and Guerrero vote by asserting that any conflict is cured because Directors Cruz and Guerrero disclosed their interests prior to the vote and that the remaining members of the Board ratified the vote of Cruz and Guerrero by not objecting.  The answers to these two assertions can be summarily disposed of.

---

[5] Although not alleged in the pleadings, both counsel have stated that the October 18, 1983 offer of MPLC was $5.00 a square meter.  This would mean Director Cruz would be paid close to $500,000 and Director Guerrero's wife would receive close to $45,000.

■ When one acts in a fiduciary capacity, he cannot circumvent his obligations and responsibilities to the beneficiary by disclosing to his/her co-trustees that he/she had a conflict. To hold otherwise would create a gaping hole in the armor of protection for the beneficiary. MPLC has produced no authority for this theory of disclosure among co-trustees and the court can find none. The theory has no substance in law.[6]

Filed with the court at the hearing on the preliminary injunction was the affidavit of Jose P. Mafnas which relates the disclosure of the interests of Directors Cruz and Guerrero at the October 18, 1983 meeting of MPLC. It is stated that the "disinterested Board Members did not at any time raise objection to the interested Board Members voting on the Motion." And, further, that "both the executive and legislative branches of the Commonwealth Government appear to approve the Board's action in that a challenge never took place." Thus MPLC argues, the Board as a whole, ratified the vote of Cruz and Guerrero.

■ This argument demonstrates the misconception of the responsibilities and obligations of each member of the Board

---

[6] The plaintiff has cited Witt v Morrow, 70 Cal-App 3d 817 to rebutt the theory of MPLC. Though Witt involved a public official disclosure act (Cal. Gov't. Code, §87203) the court held that a public official could not avoid a conflict of interest by simply disclosing his conflict. MPLC points out the Commonwealth does not have a public disclosure act but this in no way is solace or support for the position of MPLC.

of Directors of MPLC. Each and every member sits as a fiduciary. As such, none of them can waive or ratify an illegal act of the Board.[7] As co-fiduciaries the members of the board cannot ratify an act which adversely affects the beneficiaries.

Once again, MPLC has offered no authority to support their ratification theory nor can the court find any. It is rejected.

It is concluded that it was improper and illegal for Directors Cruz and Guerrero to vote on the offer made on October 18, 1983 and their votes must be and are declared null and void. 63 AmJur 2d, Public Officers and Employees, §281.

It is added that a strong enunciated public policy provides further support for the conclusion of the court. The Constitution is the basic legal document to guide the affairs of the people of the Commonwealth. This document was prepared after an extensive Constitutional Convention and accepted by the electorate. Article XI is a concerted

---

[7] The mere fact that the three "no" voters on the Board did not formally object to the Cruz and Guerrero votes has little or no significance. They are lay persons, presumably not sophisticated in the law, attending a board meeting with their peers. One can envision the personal qualms of such a person(s) objecting to a fellow board member from voting. Even further, it stretches the imagination to develop a "ratification" when it appears that such "ratification" would be a 3-3 vote if the Cruz and Guerrero votes are not allowed to "ratify" their own vote.

effort of protecting the public land resources for persons of Northern Marianas descent. To accord to the latter as much protection as possible, the restrictions, limitations, and fiduciary responsibilities were imposed upon the Public Land Corporation and the Marianas Public Land Trust.

Superimposed on this plan is the general fairness and integrity expected of public officials. It has been noted that the Commonwealth has no public official conflict of interest law and, presumably, without such a law the court is to cover its eyes to avoid seeing blatant acts of conflicts by public officials. Neither is this the common law nor is it sound public policy. The Commonwealth is still in its formative years. What better time is there now to provide the public with assurances that when a public official acts contrary to established concepts of fairness, honesty, and integrity, his actions will be held for naught? The answer is self evident.

### FUTURE COURSE OF SETTLING THE CLAIMS OF THE TINIAN LANDOWNERS

The preliminary injunction will issue and this order may be dispositive of this suit. However, the court is troubled with what it perceives as a serious problem in the future course of distributing the money which is due the Tinian landowners. Although the court raised the question at both the hearing on the temporary restraining order and

855

preliminary injunction, the plaintiff does not seriously advance the issue. MPLC does address the issue in its memorandum.

Succinctly put, the court raised the question as to the propriety of MPLC disbursing any funds for the acquisition of land.

From what has been said above, it is clear MPLC derives all of its powers, responsibilities, and obligations from Article XI, §§3, 4 and 5. None of these sections grant the power of land acquisition to MPLC. Indeed, counsel for MPLC concedes that should eminent domain be necessary to acquire the interests of the Tinian landowners, condemnation will have to be by the Government pursuant to Title 10, Trust Territory Code.

Section 3 of Title 10 originally provided that only the Government had the right to condemn land. (See 10 TTC, §3, 1970 edition)

This section was amended by Department of Interior Order 2969, §8(b), effective December 28, 1974 so that thereafter the Government or a "district legal entity as may be provided for by district law..." could condemn land. There is no law enacted which grants the condemnation power to MPLC or any Mariana Islands "District" entity. However, it appears that such an enactment was envisioned in the

Technical Agreement, Part I, 2, and 3 attached to the Covenant:

> 2. Acquisition. The Government of the Northern Mariana Islands or the legal land entity established by the Marianas District Legislature to receive and administer public lands in the Northern Mariana Islands, immediately upon request, will execute the lease for the lands being conveyed to the United States Government as described in paragraph 1, above, with the duly authorized representative of the United States under the terms set forth in Section 803 of the Covenant.
>
> . . . . .
>
> . . . All other encumbrances on or any adverse possession of lands described in paragraph 1, above, will be removed and all existing claims will be settled by the legal entity at no additional cost to the United States Government. The United States Government will, however, pay all Title II benefits due under the Uniform Relocation and Real Property Acquisition Policies Act of 1970. ...

The Marianas District Legislature did establish a Marianas Public Land Corporation. District Code, Title 15, Chapter 15.12, Act 100-75. But, as MPLC concedes, this entity was never operational. MPLC superceded the District entity. See Analysis to the Constitution pp. 146-147.

Thus a fatal flaw exists in equating MPLC with the entity envisioned in the Technical Agreement referred to in Part I, 2 and 3, supra, and if MPLC is the proper entity to acquire the private ownership interests on Tinian, one must look elsewhere.

MPLC directs the court's attention to two other sources of authority. The first is Article XI, §3 of the Constitution which provides that the management and disposition of public lands except submerged lands shall be the responsibility of MPLC. The second is the Lease Agreement entered into by MPLC, the Government, the Ports Authority and the United States of America with the accompanying Land Acquisition and Deferred Payment Agreement, both dated January 6, 1983.

Of course, if MPLC lacks the Constitutional power to acquire land and disburse funds for the acquisition, it cannot acquire this power by an agreement or agreements with other parties and therefore a careful review of §§3, 4, and 5 of Article XI must be had to determine if MPLC has the power and authority to do what it asserts it has the power to do.

The authority of MPLC over public lands extends only to surface lands. The management and disposition of submerged lands is as provided by law. Article XI, Section 2. For the lease of the Tinian submerged lands to the United States under Article VIII of the Covenant, this was expressly provided for in Public Law 3-40 which authorized the Governor and not MPLC to lease the submerged lands to the United States.

The management and disposition of public lands by MPLC must follow certain fundamental policies specified in

858

Section 5 of Article XI. A review of those policies reveals that certain limitations are placed on MPLC on the *disposition* of public lands. The Constitution is silent as to any *acquisition* of public lands be it by grant, gift, or eminent domain. The only words in the Constitution which MPLC can point to as providing authority to acquire land and disburse funds for it is the "management ... of public lands." Since the land of the private landowners of Tinian are not public lands (yet) these words are simply not applicable.

If the above still leaves some question as to the scope of authority of MPLC, that question is quickly dispelled when §5g) of Article XI is read. MPLC is constitutionally required to *promptly* transfer all moneys from public lands to the Marianas Public Land Trust less "reasonable expenses of administration." MPLC does not argue, nor could it logically, that "expenses of administration" involves the expenditure of funds amounting to several million dollars to acquire private property - an activity which it has no authority to do.

Clearly, §5g) provides that MPLC was the proper entity to receive the money from the U.S. for the public lands but it is also just as clear that it has no authority to receive that portion of U.S. funds to be ultimately paid to the private owners.

859

In the court's opinion, the problem was incorrectly solved by providing MPLC with the purported authority to acquire the land and disburse the funds in the January 6th Agreement.[8] Additionally, on judicial hindsight, it appears that the plan was ill-conceived and produced a lengthy and expensive delay for both the Government and the private landowners.[9]

---

[8]
The court can understand the dilemma of those drafting the Lease and Land Acquisition Agreement. Some method had to be devised to hold sufficient funds for the purchase of the private interests while not knowing the amount.

[9]
Though MPLC was established upon the adoption of the Constitution (January, 1978), no appointments were made and hence no members of the Board of Directors were installed until apparently the latter part of 1982. According to testimony at the Preliminary Injunction hearing, it was not until January 17, 1983 that the first Board meeting was held. Considering the newness of the Board and the presumably required expertise in land acquisition matters such as obtaining land appraisals, arriving at valuations, etc., this thankless task appears to have been thrust on an entity not only without legal authority but without the necessary skills to perform its function. Of concern to the public is the expense of negotiating and acquiring private lands. Land acquisition is usually performed by the Attorney General's Office of the Executive Branch. Such is the case in the Commonwealth for condemnation. 10 TTC §51. Thus some built in budgetary control on the expenses of acquiring property is imposed. The Attorney General must live within his budget and the costs of appraisals, etc., must be monitored. To accept the position of MPLC would mean that the sky is the limit for negotiation costs. It is noted from the affidavit of the Executive Director of MPLC that MPLC has already spent approximately $313,000 "for the preparation and negotiation for the acquisition of the private lands in Tinian."

The Commonwealth Government through its Executive Branch has the obligation to acquire the private interests on Tinian and to meet its obligations to the United States Government consistent with Article VIII of the Covenant and the Technical Agreement. It is not MPLC. Any disbursal of public funds by MPLC for other than those specified in the Constitution are simply not allowed. It must be the Executive Branch, through its normal processes, that must negotiate, the value of the private interests, disburse the funds and acquire title.

Pursuant to the Lease and Land Acquisition Agreements, the funds paid by the United States for the private interests are held in an escrow account. Specific amounts are established for the areas (zones) where the private interests are located. It also appears that a sum certain for public lands ($26,434,200) was paid to MPLC and this amount according to the Constitution should have promptly been paid to the Marianas Public Land Trust pursuant to Article XI, Section 5g). Ostensibly MPLC can act as the stake holder for the other funds while the Executive Branch determines the value to be paid for the private interests. Should the value of the private interests be determined to be more than the escrowed account(s), alternatives are available for additional payment such as legislative appropriation or a possible call on the trust

861

funds held by the Marianas Public Land Trust.[10]

The court is not unmindful of the fact that this conclusion delays the payment to the private landowners but this does not excuse the unauthorized payment by MPLC.[11] The landowners rightfully assumed MPLC had the authority to make the offer it did. However, in view of the fact that the offer is just a little over one month old, a great amount of time following the MPLC formal action has not passed.

The court is also aware that by granting the preliminary injunction, most if not all the issues of the litigation are disposed of. If a further proceeding is required Rule 65(a)(2), Com.R.Civ.P. will come into play.

ACCORDINGLY, IT IS ORDERED:

1. The Marianas Public Land Corporation its agents, employees, officers, and attorneys, are hereby enjoined from disbursing any funds it received from the United States of

---

[10] The court does not pre-judge the existence of the latter alternative but merely points out possible alternatives which can be considered. There also appears to be viable avenues for MPLC, the Government, and the Marianas Public Land Trust to work out solutions between them including the exchange of public land, should a private landowner on Tinian so desire. Also whatever MPLC has accomplished to date in acquiring land appraisals, etc., can readily be turned over to the Executive Branch for completion of the negotiations or acquisition by condemnation, if necessary.

[11] A strong possibility exists that a greater delay could occur should the matter be re-submitted to MPLC. With the votes of Cruz and Guerrero eliminated and three votes on record opposing the offer, either a swing of votes or two more votes are needed to obtain the required five vote majority.

America pursuant to the Lease Agreement executed on January 6, 1983 to any of the owners of private interests of land on Tinian Island.

2. A hearing on whether this injunction will be made permanent is set for 9:00 o'clock a.m., December 22, 1983.

3. In addition the court, on its own motion, will hear from the parties as to whether the $26,434,200 received for public lands on Tinian should be promptly deposited with the Marianas Public Land Trust and the procedure or procedures to be followed for the expeditious and proper acquisition and payment to the private landowners on Tinian.

4. Plaintiff's security shall remain on deposit with the court until the December 22, 1983 hearing.

Dated at Saipan, CM, this 25th day of November, 1983.

Robert A. Hefner, Chief Judge